May I please the court, my name is Eric Cardall. The court must be ever vigilant in cases against the government. The court needs to state what the law is and then determine whether the government violated the law. So I'd like to talk about three subject areas of law. What CPS law, which is child protection services law, and then emancipation law. All three interrelate in this case. As the court knows, in the U.S. Supreme Court in Stanley, 1972 case, which I cited in my brief, the U.S. Supreme Court said the state's interest in caring for Stanley's children is de minimis if Stanley is shown to be a fit father. So this is the foundation for fit court proceeding in which a state court judge determined that a grandparent could visit a child that when the parent was fit, that was unconstitutional. The state court could not order grandparent visitation, even in the child's best interests, if the parent was fit. So that's fit parent law. And so here we have three areas, a child getting welfare benefits before the age of majority, making medical decisions before the age of majority, and then making school decisions before the age of majority. And why would the state believe that it can do that over the fit parent's objections? So I wish I could end my... Do the best interest of the child, you mentioned grandparent visitation. You may know after that Troxel case, most of the states rewrote grandparent visitation law and made the best interest of the child govern at all, and that cases and the legislative reactions and those apparently the Supreme Court has left alone. Right, left alone, but hasn't ruled the other way. I think the strict scrutiny lesson learned from that is that here, in this case at least, the welfare benefits, the medical decisions, and the school decisions, there isn't a best interest analysis, be distinguishable from the statutes. But a point of legal modesty on the emancipation law, we had a perfectly good word in Minnesota, common law, emancipation, and we petitioned district court. When you have a petition in district court for emancipation by a teenager, unlike a CPS petition, the goal is self-custody. It's not custody for the government. The teenager becomes emancipated and can make decisions like an adult. The age of majority in Minnesota is 18. So what happened here, the point of legal modesty is the state legislature in 265D.05 took a perfectly good legal term, emancipation, and wrote this sentence, for purposes of this clause, quote, legally emancipated, means a person under the age of 18 years who, and this is the part I agree with, has been emancipated by a court of competent jurisdiction. Now here's the part that is problematic or is otherwise considered emancipated under Minnesota law. So again, in a proceeding regarding fit so we can get welfare benefits. Only the government could think of this, right? I'm becoming an adult to get welfare benefits and that's over the parent's objections. So we had a very good court process where a child could become emancipated, but here you have a fit parent objecting to welfare benefits and the agency just gets to decide. The juxtaposition is incredible between the two processes that Minnesota now uses. The same would be true on the medical services provision and the school district's policy. It's simply a fit parent gets to decide. And so for a government entity or a government statute to authorize the overriding of a parental objection, you have to have something like the parent being unfit because the US Supreme Court said in Stanley, the state's interest in the fit parent-child relationship is de minimis, like nothing. Isn't your problem really with the state statute here? You're saying the statute deprives the parents of a liberty interest by allowing emancipation without a proper court proceeding. That's kind of a feeling I got from reading your brief. Well, there's two parts. One is you just have to assume a fit parent. And then how would you imagine that a teenager would acquire emancipation rights, which could be conditional, temporary, partial. I mean, the idea is these district court judges in Minnesota are really good human beings and they know how to figure out how to give those rights to the teenager without harming the teenager. It's carefully calculated. Each case is specifically handled. So are you rejecting the state statute, the part you just said you disagree with, otherwise considered emancipated? Right. That would violate the focus of your challenge. There are two parts. That's the substantive due process challenge of that provision because it's de minimis. There's no interest. And so how can they override a fit parent's objections with something, a phrase like otherwise considered emancipated? When you say they. The state legislature through the county, the county implements the benefit program. So the point being that the government has a situation. I mean, if this were to occur in a, I mean, we work so hard in the CPS setting to have statutes that don't place a circuit case in Allsager, applying substantive due process rights to a parent in a child protection proceeding. Well, all those protections are gone when it comes to a fit parent in this provision. Where are all those definitions? Where are all those standards? Where are all those requirements? How is the county liable for the statute? The county, the county provide benefits to the child over my client's objection. And in the future, the same thing could happen to my, uh, my client's minor children. So with respect to, uh, going to this point about, uh, strict scrutiny on substantive due process claims, the circuit panel and Finnegan on August 10th, 2018, uh, found that it was well established law that the seizure clause applied to child protection services. Now, seizure of a child by abuse of parental direction, termination of parental rights all sound very, very similar. And so the point would be, you know, why is it that with a fit parent, that the county, uh, the medical service providers and the school district can make these decisions or authorize children to make these decisions over parental objection. Now, one last point, if, if at that point you're still not convinced of the substantive due process argument, there is a, it is asymmetry, which is important to point out. Then the common law of Minnesota, this right to petition for emancipation is well founded, but the common law never anticipated agencies with respect to fit parents terminating their rights. So there's no common law petition for a parent to restore parental rights. And so in Minnesota, common law, there was now going, of course, I don't know, Minnesota common law, but Missouri is kind of common law. They said anything that was necessary for the child could be done if they were 10 years old and they were cut and bleeding, they could get medical care, do this, do that. And in fact, it was expanded anything that was called necessaries. How does that factor into your analysis? Minnesota hasn't adopted the mature minor doctrine. Say it one more time. There's a mature minor doctrine. Minnesota hasn't adopted it. So the age of majority, how about necessaries? Haven't you had necessaries in your law forever for emergency room, taking care of a rule? We wouldn't want to swallow the rule up so that the parents make decisions. I think that on that point about Minnesota too, I have to point out, we don't have in our constitution, a private cause of action to sue the government. My client, I found this out the hard way, but eighth circuit panel decision called Eggenberger. And so I know that. And so unlike a state like Illinois, where you can sue the government. So when these governmental entities, the county and the schools should do this, there's no private cause of action to sue to restore rights, which leads me to procedural due process points. Fit parents, I would assert, should have at least the procedural due process rights that unfit parents have. This court over the decades has worked very hard to ensure procedural due process rights in child protection service settings. Why wouldn't you make the And no parental consent is required to diminish parental rights without notice and opportunity to be heard. Let me just go through the aspects. I do have a question I need to ask you since you're getting close to the end of your time. This is a 1983 case, right? In every regard, 42 USC, 1983, right? And at this point, all we're concerned about is the damages, right? Damage is the only thing still at stake. Oh, no, I'm sorry. We were dismissed and the summary judgment motion was denied. So we're, we're, we're working on the, the substance claims. I think what he's getting at is that the declaratory and injunctive relief claims might be moot and therefore damages are the only remaining claim at issue. Do you have a view on that? Of course. My reply brief, I mentioned that my client still has minor children and here where there's no notice at all to parents, I would, I would really plead with the court that their health and safety concerns when you have counties, you have school districts and you have agencies working with children without consulting parents on big decisions, it can be disastrous. And so, you know, this idea that the government's here for safety and health, that of children, that's true in a CPS context, but here you have fit parents. And so I encourage the court to consider the declaratory relief and injunction that I'm seeking now in the county. You didn't even address the mootness question. I did. It's a pre-enforcement. Parents, parents in Minnesota have a right to know when they send their children out what, what might happen. And if without any notice, a parent finds out, well, I'm not making school decisions anymore. My child's got county benefits. Think about that. My teenager can go to the county, say I'm emancipated, and then the kid gets benefits and can live in an apartment. I mean, without notice to the parent. Why is it not moot? It's because my client has additional minor children. Okay. Well, that was a short answer. Yep. Thank you. Thank you. So, just going through this. So, no pre-termination notice, no opportunity to be heard, no post-termination notice, which is very until we kind of went through this district court saying we couldn't change his name. There were documents that were submitted. We didn't really find out about the letter from the Mid-Minnesota Legal Aid Clinic. And there were no appeal, no private cause of action to restore parental rights. There are five of them that are all included in the CPS proceeding. And when it comes to fit parents, nothing. So, now this argument about the appellee's mature minor statutory argument, it's a law school textbook example of a compelling state interest argument that does not work. So, what happens is, the argument is 144.341 is not a mature minor statute. It's not a mature minor statute because it's about a specific subject area, not generally, like Your Honor was suggesting. Two, there's no reference to the statute for age of majority, and there's no triggering age. But most importantly, it's fatally under-inclusive. Most mature minors, you won't be surprised, live at their parents' home. So, if we're going to go for mature minor statutes, then we've got to take care of all the mature minors, not just those living separate from their parents. I think I'll save the rest of my time for rebuttal. Thank you. Thank you. We'll hear from counsel. I see you've divided your time, and of course, you'll follow your own self-imposed time limitations. And you are Mr.? Mr. Wilk, David Wilk, Judge. Park Nicolet?  You may proceed, sir. Thank you, Judge. May it please the Court, David Wilk here on behalf of Park Nicolet. We are advancing an argument on behalf of both Park Nicolet and the Fairview Health Services in order to keep ourselves on track here with the timeline. The medical providers, that is, Park Nicolet and Fairview Health Services, are not state actors. This is a 1983 case. They are not state actors, and Ms. Calgaro's claim against them was properly dismissed by Judge Magnuson below. Now, we heard reference to agencies, and I think that's supposed to be the health care providers. We're not government agencies. We're not state-approved medical providers, I think was referenced in the brief. We're just non-profits. We're non-profit, private organizations providing health care to folks who come in. And the state has set out ways in which we can assure ourselves that we are providing that care to people who have consented to that care. So, we're not agencies. We're medical providers. We do receive government money, state and federal. The Court has said that's not enough in Nichols and elsewhere. The United States Supreme Court has said that's not enough in a number of cases. We are regulated. The Supreme Court, this Court, in a host of cases, has said that's not enough to transform a private entity into a government entity. And the statute, 144.341, doesn't change any of this. It merely allows, and it's one of a variety of statutes we have here in Minnesota, that allow minors under very unique circumstances to consent to their own care, whether it's routine medical care or other kinds of care. There's a provision about emergency care. What was the very unique circumstance that was at issue here? We had a, Judge, we had a minor who doesn't live at home. That's the unique circumstance? And we have a minor who's providing for herself financially. And under that statute, that minor now has the ability to consent to medical care, or at least the provider is entitled to rely on that consent. We have a parent in the case. You have a separate residence and separate finances, right? Yes, sir. Okay. Proceed. Yes, sir. When you say very unique, you don't mean, you don't really mean unique. You mean a person in that category. Yes, sir. I suspect it is unique. The only person in the state? Pardon me? She's the only person in the state who lives apart from her parents? I can't say that unique. Well, that's what unique means. I don't mean a one-off. I mean, it's a situation that must be common enough for the state to need to account for it. But we can't forget that, according to the complaint, Ms. Calgaro was the custodial parent. And if you have a person living outside of your home and you don't take measures to return that minor to your home, you are within the statute. And so before the case was filed, while the case was pending, and even after Judge Magnuson dismissed the case, this person was a minor. And Ms. Calgaro was the custodial parent, had a right to demand the return, demand by actual state actors, demand the return of this person to her home. She didn't do that. Is the record clear on that? Well, we've got a complaint. And we know the timing of the complaint. We know the birth date. But we don't have anything to suggest that that was ever requested. And if it was, it was certainly requested by state actors who aren't here today. And we're not a state actor, and neither is Fairview. Thank you very much. Very well. Mr. Calgaro. It's not that difficult to pronounce. I'll let you pronounce it in the first instance. Good morning. Assistant County Attorney Nick Campanario. Thank you. On behalf of St. Louis County. Ms. Calgaro claims that St. Louis County violated her due process rights in connection with the decision that her child was eligible for general assistance. And there are two distinct aspects of the claim. One of them is that the decision itself, that the substance of the decision, violated her rights as a parent. The other one is that the procedure we used in making the decision, namely the fact that she didn't get notice of a hearing, violated her rights as a parent. And both aspects of the claim fail based on Monell's policy or custom requirement, although for slightly different reasons that I'll explain. And I'll start with the procedural aspect first. Under Minnesota law, county agencies have an obligation to administer the general assistance program according to laws and rules that are adopted by the State Department of Human Services. And so what are those laws and rules? They include Chapter 256 of the Minnesota statutes, which addresses human services matters, including general assistance matters. They also include Chapter 256D of the Minnesota statutes, which is specifically devoted to the general assistance program. And they also include Chapter 9500 of the state rules, which is the rules adopted by the State Department of Human Services that address general assistance and other assistance payment programs. But in this circuit, it's still an open question about whether you can be sued for how you implement a state law, right? The Slavin case and others? Yeah. Proceed. Yep. These are our instructions as a county agency when it comes to general assistance. What does it say in there about how to determine whether a child is emancipated? My argument with respect to the substance part of the claim is a little bit different from the one that I'm addressing now with respect to the procedure. Okay. You have very little time, so you don't want to cut to the chase on the procedure argument. Emancipation is not defined, is it? Pardon me? I'll cut more to the chase. Emancipation is not defined in the general assistance statute, right? Correct. It's just stated as a word, emancipated. Go ahead. What's your argument on the substance? How do you decide whether someone is emancipated? As Judge Magnuson ruled, if you look at the factual allegations in the complaint, what they suggest at best is that the county worker who handled EJK's application for general assistance made a mistake in concluding that she was eligible as a legally emancipated person. Okay? The county is not liable for a mistake made by a county worker because of Monell's policy or custom requirement. There are no factual allegations in the complaint indicating that the county has a policy that caused that worker to make that wrong decision. There are no factual allegations in the complaint indicating that this was anything other than a one-off type of decision. That is, it wasn't part of a broader pattern or persistent pattern of conduct that would rise to the level of a custom. And so if there was a problem with how this application was handled, it's not a problem that we as the county are responsible for because it was not caused by a policy or custom. Are there published policies about how to determine whether a child is emancipated? At this stage in the case, when we're at a Rule 12 stage, there's nothing that's been pointed to in the complaint along those lines. Of course, you have a statute and you have a state rule that addresses it, but there's nothing beyond that. I understand that what I'm asking about might not be in the complaint, but if it's a matter of public record, I thought you could enlighten us. I am not aware of anything beyond the terms of the statute in the rule itself. And there's been no allegation that there's anything beyond that in terms of the existence of a county policy. So you think the county just leaves it up to these individual case workers to decide whether a child is emancipated? No, I don't at all. If I could address that, the notion that we determined that the child was emancipated, I think, as Judge Magnuson recognized- I don't mean that you made the legal determination and caused her to be emancipated. I'm saying you determined. I thought you just said that most of the complaint alleges is your case worker made a mistake and concluded that this person was emancipated. Correct. So when you said there's no policy in the county about how to make that decision, I understood you to be saying you just leave it up to these individual case workers to decide whether a minor who comes in is emancipated or not and should get benefits. I think that's the most- I don't agree with that because- Okay, so what is the policy then, if that's not how it works? The policy is that the statute and the state rule addressing eligibility standards themselves define the term legally emancipated. And so that is what a worker handling an application would be directed to follow. Well, all right. So you're just saying- so maybe it's- the worker has to interpret the statute and determine whether the minor is otherwise considered emancipated. Correct. And do you know anything about what that means? Otherwise considered emancipated? How are you considered emancipated without being emancipated by a court of competent jurisdiction? I would say that's a big question mark. So does the county feel that this decision was correct, that this person was properly treated as emancipated? I think it would be a fair thing to say, if you take all of the allegations and the complaint as true, which is what we're doing, that the worker made a mistake in this case. You're just saying there's no policy or custom that causes you're not liable. Yes, as Judge Magnuson pointed out, that's correct. Well, then why did the worker do it then, if there's no policy? The worker is obligated to make a decision with respect to the application. Under state law. Yep. They have to say, stamp yes or no, but what I was getting at is that they may have made the wrong decision in this particular case. By stamping yes, it might have been a mistake. Correct. Does that go to due process or substantive due process violation? Is it procedural due process or substantive? This part of the case is what we've been calling the substance aspect. Is it an open question? Well, Judge Benton suggested it's an open question in this circuit whether an organization is a state actor by enforcing a state statute. Yeah, in the Slavin case was the only instance I was able to find and it expressly said that. Is it open to us to say that in that circumstance, your organization would be a state actor? What would preclude a holding to that effect? I have made an... No, Manel was on a different issue, isn't he? No, it's not. The argument that what we did was required by state law does not apply to the substance aspect of the case. It applies to the fact that we didn't give notice in a hearing. Right, we know that. I mean, so back to the substance... No, go ahead, you have a line. In the substantive due process violation, again, your answer, again, has been it was an employee's mistake. There's no policy. No policy and no custom of making similar mistakes. The person in this situation is without any effective remedy. That's just the breaks of the game, for want of a better term. Based on the way that the claims are pleaded in the complaint, yes, that's correct. Can you go back to what you said about the procedural claim? You said that the Slaven issue would only relate to the notice in hearing. Correct. Can you elaborate on that? The reasoning there is this stack of instructions spells out for county agencies when to provide notice in a hearing. In the situation that we faced in this case, a parent whose child is ruled eligible for general assistance is not one of the situations where notice in a hearing is called for. And so in not providing notice in a hearing to Ms. Calgaro, we were just following the directions that we had been given by the state legislature in the statutes and by the State Department of Human Services in the rules. And by the way, we didn't sign up for the role of general assistance administrator. Under state law, we have to administer it, and we have to do it in accordance with state statutes and rules. And so what cases from other circuits have said is that under these circumstances, where there's no deliberate choice or conscious choice on the part of the county in choosing to enforce the state laws that it's required to enforce, if there's an injury that flows from that, that injury is caused by state policy, not by any policy of ours. And so it is a Monell, and it is a Section 1983 issue. But how did the state require you to give benefits to this? No, and again, there's- Well, I know you keep wanting to say that's only on the substantive side. Two separate aspects of the claim. You're saying the statute basically required that you not give notice in hearing. It didn't actually say that. It said it didn't require you to give notice in hearing, so that's one. You could have given notice if you wanted to, couldn't you? No, it's prohibited. I think that in a case where- and by the way, there are laundry lists of situations identified in the statutes and rules where notice in hearing is contemplated. The fact that our situation isn't on that list, I think rightfully so, is viewed as an intentional omission on the part of- Is there a situation where the county deems a minor to be emancipated and therefore eligible for benefits? Correct. Our specific situation, I would say, is does a parent get notice in a hearing when there's a determination that her child is eligible for general assistance? Even if it's a mistake, the parent doesn't get notice. Correct. Yeah. And when the- Isn't there some way to- I mean, I understand the problem with maybe the pleading of this, but isn't there some way for the county to avoid a mistake in a situation of such significance? I mean, when- how can this mistake be made if there's no court order emancipating the person? What would be the worker's thought process in determining the child is emancipated? When you have a county of our size, I can't tell you the number of public assistance applications that we get over the course of a year, but there are many. And I can't tell you exactly how many of these workers come in and exit the system as employees over the course of a year, but there's a lot of turnover. And so it shouldn't be- We should expect a lot of mistakes. No. You have a lot of turnover and you have no policy. That's kind of what I'm hearing. It shouldn't be a surprise that there's an allegation that one mistake- There's no allegation that any other general assistance or any other kind of application has been screwed up by the county. It's not that surprising that every now and again a mistake will be made, I don't think. And furthermore, there are the allegations in the complaint about the letter that was authored by a legal aid organization that asserted that EGK had been emancipated. And it's not alleged, but I think you may be able to infer that that may have been part of the information that EGK submitted to the worker who made the decision. We thank you for your argument. Thank you. And now, Mr. Helmers, I believe it is? That's correct. You may proceed, sir. All right, thank you. Trevor Helmers on behalf of the St. Louis County School District and Principal Michael Johnson. And we are here today asking the court to affirm the district court's dismissal of this matter. This is a classic case of a failure to state a claim upon which relief can be granted under 12b-6, specifically against my clients because appellant failed to plead facts, showing that she had any plausible claim to relief. I'm going to focus mainly- I'll rely on my brief for most of the arguments, but I'll focus on two main arguments today. First of all, that appellant failed to plead facts in the complaint to show she has a plausible relief under Minnell. And second of all, that the complaint failed to identify any legally recognized constitutional right with which the district allegedly interfered. However, briefly, I would like to touch on one of the questions that you asked related to mootness. I would agree that the only issue in this case remaining is whether there was a constitutional violation and the damages for that. And I would point out specifically for school districts, it is settled law that merely having children who continue to attend school is insufficient to overcome mootness. We've cited those cases in our briefs. We think that is- that's determinative here. Under Minnell liability, in order to survive a motion to dismiss, there must be facts which would support the existence of an unconstitutional policy or custom. And there were no facts alleged in the complaint to establish that policy or custom here, only legal conclusions. And the mere invocation of the words policy and custom is simply not enough. You have to bring up specific facts that would tend to demonstrate the actual existence. The district's policies are in the record, plainly established that the district does not have a policy or custom of interfering with parental rights. And also there's an argument about who was the final decision maker in this case, and that is also settled by state law. Do you believe you are or are not covered by statute 144.341 as a personal service? As you know, the rest of it's medical issue. We would not believe that we were covered by that. Okay, thank you. Go ahead. Correct. And only the school board has the authority to make those final policymaking decisions. And I would also point out there was a lot of discussion about the Slavin line of cases. There is some language from the Engenberger case that was also mentioned by opposing counsel that talks about compliance with state law not forming the basis for 1983 liability. That's the Engenberger case that's cited in our materials. And in this case, the two actual allegations that there are against the district is, first of all, that we interfered with a parent's right to make educational decisions. And second of all, that we failed to grant educational records upon request. And the district was required here under section 1302 to deny access to data at the request of the minor. And we were required under McKinney-Vento to admit the minor when she came into the school building. We kind of skipped the first one. It's your principal says she's emancipated. You don't have any right to deal with this anymore, parent, right? I would say that's not correct. The district does not deal with emancipation. Wait, wait, wait. It's your principal that told the parent that. You're disclaiming your agent? I think so. Again, we're on the motion to dismiss. The motion to dismiss is that the district determined she was emancipated. And so we might be getting confused with some of the additional facts that came in later and some of the allegations that have been made since that time. But as far as what's actually in the complaint, it just simply says that the principal determined her to be emancipated, that the school district determined her to be emancipated. But that is not something that the district does. The district does not do emancipation. Wait, wait. We have to assume what they say is true. We do. This principal determined the school district determined it. Tell me the line you're drawing. I don't get it. So the line that we're drawing is that initially that we just simply don't do emancipation decisions. That's not something that the district can do under law. We cannot emancipate a child under the state law. And simply, this would be something where all that's actually been alleged, when you get down to what are the constitutional violations, there's no constitutional right to have a child not be emancipated. That's not even being argued here. The constitutional rights that are being alleged that we violated are access to records and educational decision making. And I see that my time is up. I would ask if there were any further questions on the actual constitutional issues. Apparently not. Thank you. And now we have Mr. Ponto. Good morning, sir. You may proceed. Good morning. May it please the court. I'm Mike Ponto. I represent EJK, Ms. Calgaro's child. Your honors, having reached the age of majority, EJK has asked that I refer to her today as Ms. Carl. She'll no longer be directly impacted by the outcome of this appeal, but she remains involved because she wants to ensure that other minors who find themselves in similar circumstances enjoy the same limited rights and benefits that helped her to survive a difficult adolescence. Appellant Calgaro wants to cast this as a constitutional matter. It is, in fact, nothing more or less than a family dispute. No one represented in this courtroom, or from whom you have heard, compelled or constrained Ms. Calgaro from doing anything. Under those circumstances, the case law is clear that she has no constitutional claim. The Minnesota statute that Ms. Calgaro complains about is no different. It applies under limited circumstances, and what it does is merely to grant medical decision making authority to certain minors without taking anything away from their parents. Rather than suing her child in federal court, Ms. Calgaro could, of course, have demanded that Ms. Carl return to the family home. Failing that, the law did offer her remedies in at least two clear forms. Specifically, she could have sought assistance from her county child welfare agency. She could have commenced a child in need of protection or services action in the state's juvenile court system. Simply put, if she had pursued either of those avenues of recourse, none of the things about which she now complains could have happened. The statute wouldn't have applied, the child would have been at home, would not have been receiving benefits. In his well-reasoned decision, Judge Magnuson properly recognized that it's not within the power or province of the federal courts to resolve this family law matter, and for all of those reasons, I'd urge the court to affirm. Thank you. Mr. Cardall, you have some time for rebuttal. Yes, just a few points. With respect to the court's disposition on determining whether a government has delegated a function to the medical service providers, it's important to sympathize with Minnesota's legal tradition of having a longstanding common law tradition of petitions for emancipation. This is the thing that's always been available to a teenager to go to district court. The statute that intervened in 144.341 and delegated this responsibility of determining whether a child is living independently and managing their own financial affairs to medical service providers. The state action, of course, as the U.S. Supreme Court has recognized, Ludwig Edmondson and his progeny, is if a traditional government function is delegated to a private agency, a private person, that it can be sued under 42 U.S.C. 1983. And as the court knows very well, the court enjoys immunity when it makes very important decisions, like court decisions, and that immunity was also bestowed on the fact finder, the medical service providers, by statute. So not only did the legislature recognize this was a very important decision, they granted the medical service providers immunity if they got it wrong, that the child wasn't living away from the parents. Remember, this is all sort of information provided by the teenager. I'm living away from my parent, and then they get immunity if they get that wrong. But yet the FIT parents control that teenager. It depends on that adjudication at the front desk at the hospital or clinic. On qualified immunity, I just wanted to turn the court's attention to Finnegan, the recent case, August 10, 2018, which dealt with CPS. That was dealing with CPS parents, not FIT parents. And it's well-established law under Finnegan and other cases that, as I mentioned, the state has a de minimis interest in interfering with a FIT parent's relationship with a child. With the school district, I don't know what more I can do. I mean, Monell is about policy or custom. I'm relying on statute. I mean, you know, we're relying on the statutes. They're relying on statutes to make their decisions. The county, similarly, they're relying on the statute. There are all these statutes involved, and I provide you with a good explanation, juxtaposing these statutes to the CPS statutes and how careful the court is with respect to that, and then also introducing the emancipation topic. And what is our closest case? Is it part of your position on that, would you say? The cases that the court should pay most attention to on the substantive due process claim, which under Oxfam's razor is the easiest way for my clients to win, is the Stanley v. Illinois case, which says the state only has a de minimis interest in a FIT parent-child relationship, and then Troxel, which said that the government can't even order grandparent visitation here. It's much more invasive with the welfare benefits, the educational decisions, and the medical services. These are life-changing things. One last note, in fairness, on the mootness question. You can look at this as a deficit or as a benefit, right? Because the benefit is the court in these facial challenges always wants an as-applied context. And so here you have facial challenges that were brought up in the complaint properly, and you have an as-applied context, and you have these minor children. And, again, there are safety and health concerns that the government isn't considering. They've admitted to you they don't give notice to the parents through these proceedings, and they're harming children now. Thank you, Your Honor. All right, well, the case is submitted, and we will take it under consideration.